UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERNEST McREYNOLDS,

                Petitioner,                     Case Number: 13-13883
                                                 Honorable David M. Lawson

v.

BONITA HOFFNER,

                Respondent.

_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>**

      Petitioner Ernest McReynolds was accused of stabbing Reginald Lucas multiple times during an altercation in McReynolds's residence on December 10, 2006. Lucas died from his wounds, and McReynolds hid the body under a broken piece of plywood behind a garage in an alley a few houses away. The state charged McReynolds with first-degree murder, but he negotiated an agreement through his trial counsel to plead no contest to second-degree murder, and a sentence not to exceed 13.5 to 30 years, which was within the state sentencing guideline range. After he was sentenced consistent with the agreement, he apparently changed his mind and attempted to withdraw his plea. The state courts denied relief, and he filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that his appellate lawyer was constitutionally ineffective, and his no contest plea was involuntary because the petitioner was heavily medicated during the plea proceedings and he is actually innocent. The warden filed a response to the petition, arguing that it was not filed timely and lacks merit. It appears that the petitioner's first appellate lawyer failed him at every turn. However, a successor lawyer was appointed, who ably presented all of the petitioner's issues to the state courts, where he was given a fair hearing. The state courts' decisions did not contravene or

unreasonably apply federal law as determined by the United States Supreme Court.  Therefore, the petition for a writ of habeas corpus will be denied.

I.

According to the evidence presented at the preliminary examination, McReynolds occupied a house on Winthrop Street in Detroit, owned by Joseph Awada.  Awada had rented the house to the petitioner in anticipation of selling it to him.  In the early morning hours of December 10, 2006, McReynolds telephoned Awada, waking him and telling him that three people had entered the house through the front door, and they robbed and beat him.  McReynolds called back about 30 minutes later, stating that he feared the individuals were coming back.  It appears that Awada did not take this report seriously, as he hung up on McReynolds during the second call.

Later that day, the police found Reginald Lucas's body behind a garage a few doors down from Awada's rental house, and traced the movement of the body back to that house by means of blood trails.  The petitioner was questioned and eventually, during a second statement, he admitted to stabbing Lucas.  He said that three men entered his house, pinned him to the floor, and took $40 from his pants pocket.  As they ran from the house, one fell, breaking a glass table.  The petitioner said he caught him and "started punching like hell. . . ."  He said he "went berserk."  He admitted stabbing him with "something sharp, like a knife," although he did not know how many times he stabbed him.  The other two had fled by then. The petitioner said he started "freaking out," and admitted dragging the body to another house and then attempting to wash away the blood evidence. Afterward, he went for a walk and then to his girlfriend's house.  He said he disposed of the knife.

The petitioner was charged with first-degree premeditated murder.  His court-appointed trial counsel sought and obtained a psychological examination to evaluate McReynolds's competentcy

to stand trial. The state psychologist's report, which was not included in the Rule 5 materials filed by the respondent, apparently concluded that the petitioner was competent to stand trial. The attorneys stipulated to admit the report in evidence at a competency hearing, and the trial judge found the petitioner competent.

After the petitioner was bound over to stand trial, his lawyer filed a motion to quash the criminal information. There was no dispute that the petitioner stabbed Lucas to death. Instead, his lawyer argued that the evidence established self-defense, or at least demonstrated that the first-degree murder charge overstated the crime. The court denied that motion and set a trial date.

As indicated above, the petitioner subsequently negotiated an agreement with the prosecutor to plead no contest to second-degree murder, with a dismissal of the first-degree murder charge, and a sentence of 13.5 to 30 years. He entered that plea on the record on August 31, 2006, after having been informed of his trial rights and expressing an understanding that he was waiving them. Defense counsel explained that the petitioner was tendering a no contest plea (thereby avoiding admission of the facts of the killing) because of "mental health issues . . . and/or potential civil liability." Plea Hrg. Tr. at 5 (Aug. 31, 2006). The court accepted his plea. The petitioner was sentenced on September 18, 2007 in accordance with the plea agreement.

On October 15, 2007, the trial court entered an order appointing attorney George Chatman to represent the petitioner on appeal. It appears that there was a breakdown in the relationship between the two, although the record is not clear on that point. It is clear, however, that Chatman never filed any motions or appeals on the petitioner's behalf. On March 9, 2008, the petitioner and appointed counsel both signed a document entitled "Discharge and Release," in which McReynolds "notif[ied]" Chatman that he "no longer want[ed] [him] to be [his] attorney or represent" him in his

case. Chatman agreed to "move for the appointment of substitute counsel on appeal." ECF No. 12, Pg. ID 433. However, Chatman did not file a motion to vacate the order of appointment until September 1, 2009. The trial court granted the motion on September 15, 2009, but did not appoint substitute counsel until almost one year later, on August 17, 2010. At that time, attorney Lee Somerville was appointed to represent the petitioner. Somerville filed a motion for relief from judgment in the trial court on July 11, 2011, arguing that the petitioner's plea was coerced, he was innocent, his plea was involuntary, one of the witnesses against the petitioner had a pecuniary interest in an unrelated civil case in which the petitioner was a plaintiff, and appellate counsel (Chatman) was ineffective. The trial court denied the motion on the merits in a brief but concise written opinion.

Somerville then filed an application for leave to appeal in the Michigan Court of Appeals on the petitioner's behalf, raising the same claims asserted in the motion for relief from judgment. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. McReynolds*, No. 310984 (Mich. Ct. App. Dec. 14, 2012). The petitioner then sought leave to appeal in the Michigan Supreme Court, which also denied leave to appeal because the petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. McReynolds*, 494 Mich. 881, 834 N.W.2d 481 (2013).

The petitioner filed *pro se* the present petition for a writ of habeas corpus on September 5, 2013. He raises these claims:

I.    IS PETITIONER ENTITLED TO HABEAS CORPUS RELIEF WHERE HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WAS VIOLATED WHERE: (1) COUNSEL'S FAILURE TO PURSUE THE DIRECT APPEAL OF RIGHT AND ALLOWED THE CASE TO LAY DORMANT, (2) FAILED TO ENSURE THAT PETITIONER WAS MENTALLY COMPETENT TO

-4-

ENTER A NO CONTEST-GUILTY PLEA, AND (3) COUNSEL'S FAILURE TO INVESTIGATE THE FACTS OF THE CASE AND MOUNT AN ACTUAL INNOCENCE CLAIM ON DIRECT APPEAL REQUIRING REVERSAL. US CONST AM VI AND XIV?

II.     IS PETITIONER ENTITLED TO WITHDRAW HIS NO CONTEST-GUILTY PLEA AND PROCEED TO TRIAL, BECAUSE HE IS ACTUALLY INNOCENT OF THE CRIME OF MURDER, WHERE HE WAS HEAVILY MEDICATED DURING THE PLEA AND HIS PLEA WAS BASED ON INACCURATE INFORMATION RENDERING THE PLEA INVOLUNTARY REQUIRING HABEAS RELIEF[?]  US CONST AM XIV.

Pet. at 7.  The respondent filed an answer to the petition raising a statute of limitations defense, and the petitioner filed a reply.

## II.

The respondent's untimeliness argument references the requirement that a habeas petitioner must bring his claims within one year of the date his conviction becomes final.  *See* 28 U.S.C. 2244(d)(1).  The respondent reasons that the petitioner's state proceedings became final after the time for direct review expired, because the petitioner's first appellate attorney never filed an application for leave to appeal, and his successor counsel's motion for relief from judgment could not toll a statute of limitations that had expired already.  The Court finds it unnecessary to address this procedural question.  It is not a jurisdictional bar to review of the merits.  *Smith v. State of Ohio Dept. of Rehabilitation*, 463 F. 3d 426, 429, n.2 (6th Cir. 2006).  The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

## III.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because McReynolds filed his petition after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither

asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

## A.

The petitioner argues that his first appellate lawyer was constitutionally ineffective for several reasons, not the least of which is that he never filed an application for leave to appeal or took any other action to preserve and pursue the petitioner's appellate issues.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective-assistance-of-counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish a claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 120 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

## 1.

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To prevail on a claim of ineffective assistance of appellate counsel, the petitioner ordinarily must demonstrate that appellate counsel's performance was deficient and that the deficient performance prejudiced the

appeal. *Strickland*, 466 U.S. at 687. However, where counsel fails to provide any assistance to a criminal defendant during a critical state of the proceedings, prejudice may be presumed if counsel's failure "rendered the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000). In *Flores-Ortega*, the Supreme Court held that appellate counsel's failure to file a notice of appeal established a presumption of prejudice because counsel's failure resulted in the complete denial of an appeal the defendant would have otherwise taken. *Id.* at 483-84. The Sixth Circuit Court of Appeals likewise has held that when an appellate attorney's defective performance deprives a defendant of his right to appeal, the petitioner need not make a showing of prejudice because prejudice is presumed. *Hardaway v. Robinson*, 655 F.3d 445, 449-50 (6th Cir. 2011).

In *Hardaway*, the petitioner's appellate counsel filed a timely claim of appeal but failed to file an appellate brief on time, which resulted in the dismissal of the petitioner's appeal. *Id.* at 447. The petitioner, through a new attorney, filed a delayed application for leave to appeal, which was untimely. *Ibid.* At the suggestion of the Michigan Supreme Court (which denied the petitioner's application for leave to appeal), the petitioner filed a motion for post-conviction relief in the trial court. *Ibid.* The trial court denied the motion and both Michigan appellate courts denied leave to appeal "for lack of merit in the grounds presented." *Ibid.* The Sixth Circuit Court of Appeals held that prejudice was presumed in that circumstance because "the failure to file an appellate brief rendered Hardaway's direct appeal 'entirely nonexistent.'" *Id.* at 449 (quoting *Flores-Ortega*, 528 U.S. at 484). The court of appeals further held that Michigan's collateral post-conviction proceeding is not an adequate substitute for a direct appeal, because an appeal to the Michigan Court of Appeals following the denial of a motion for collateral review in the trial court is unlike an appeal of right

-8-

in several important respects: it is by leave rather than by right; the merits of a defendant's claim are only reviewed if leave to appeal is granted; and the defendant is not entitled to appointment of counsel or oral argument. *Id.* at 449-450. The Sixth Circuit concluded that the differences between a direct appeal, which the petitioner had a right to pursue, and an application for leave to appeal a post-conviction motion, which carries a more difficult standard of review, "[t]aken together . . . render Michigan's collateral post-conviction proceeding too unlike an appeal of right to constitute a sufficient substitute." *Id.* at 450. The Court acknowledged, however, that its decision did not extend to circumstances in which "the Michigan Court of Appeals granted rather than denied leave to appeal, insured that petitioner had a right to appellate counsel, and permitted the case to proceed as for an appeal of right under Mich. Ct. R. 7.205(D)(3), and disposed of the merits to the same extent that it would have on a direct appeal." *Ibid.*

In light of *Hardaway*'s guidance, the question here is whether the post-conviction efforts of attorney Somerville constituted a "sufficient substitute" for the appellate rights that were forfeited by the neglect of attorney Chatman. For several reasons, the Court believes they were. *First*, the petitioner never had a right to claim an appeal to challenge his no contest plea or to raise any other appellate issue. Under Michigan law, a defendant convicted on a guilty or no contest plea must file an application for leave to appeal, which invokes a form of discretionary review. *See* Mich. Ct. R. 6.302(B)(5) (requiring a defendant to be advised during the plea colloquy that "any appeal from the conviction and sentence pursuant to the plea will be by application for leave to appeal and not by right"); *see People v. Maxson*, 482 Mich. 385, 389, 759 N.W.2d 817, 820 (2008) (observing that in such appeals by leave, an "appellate court . . . has the discretion to choose whether to reach the merits of a defendant's appeal").

-9-

*Second*, the petitioner was represented by appointed counsel when he filed a motion for relief from judgment in the trial court and an application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals. *Third*, although state rules governing post-conviction motions limit the authority of a court to grant relief for issues that "could have been raised on appeal from the conviction and sentence," absent a showing of cause and prejudice, Mich. Ct. R. 6.508(D)(3), the trial court addressed merits of the petitioner's claims.

*Fourth*, although the Michigan Court of Appeals did not issue an opinion when adjudicating the petitioner's application for leave to appeal the denial of his post-conviction motion, that court applied the same standard to his application as it would have on a timely application challenging a no contest plea, *see* Mich. Ct. R. 7.205(E)(2), denying leave to appeal "for lack of merit in the grounds presented," rather than for a procedural bar created by a failure to raise these claims on direct review. *People v. McReynolds*, No. 310984 (Mich. Ct. App. Dec. 14, 2012), ECF No. 8-12, Pg. ID 244. Despite the lack of a reasoned decision by the state court of appeals, this Court must assume that it rejected the petitioner's claims on the merits in its summary order, triggering AEDPA's deferential standard of review. *Harrington*, 562 U.S. at 98 (holding that "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief"). The Supreme Court has held that when a claim is presented for adjudication to a state court, there is a presumption "that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 99-100. The record does not suggest any alternative explanation in this case.

-10-

Despite attorney Chatman's missteps, the petitioner received the appellate opportunity to which he was entitled: a counseled application for leave to appeal to the Michigan Court of Appeals, which was denied on the merits. Therefore, prejudice to the petitioner cannot be presumed, and he must show that Chatman's deficient performance prejudiced him. Chatman's failure to file an application for leave to appeal did not result in such prejudice.

The trial court determined that the petitioner's ineffective assistance of counsel claim failed because his underlying issues lacked merit, and appellate "[c]ounsel is not required to raise frivolous or meritless arguments." Op. Denying Mot. For Relief from J. at 3 (June 7, 2007). For the reasons discussed below, that decision does not contravene or unreasonably apply federal constitutional law. *See Strickland*, 466 U.S. at 687 (requiring a showing of prejudice); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (holding that "[a]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit'") (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

## 2.

The petitioner also argues that appellate counsel (Chatman) failed to challenge the petitioner's competence to enter a no contest plea. However, the record shows that trial counsel requested a competency evaluation, the petitioner was examined by a psychiatrist, and he was determined to be competent to stand trial. Competency Hr'g Tr. at 4 (Apr. 11, 2007). Moreover, attorney Somerville raised that issue in the post-conviction motion, and the trial court addressed it on the merits. Finally, as discussed below, the petitioner has not provided any support for his claim that he was incompetent to enter a no contest plea or that he gave his appellate attorney any reason

-11-

to question his competence.  The petitioner's unsupported allegations are insufficient to establish his attorney's ineffectiveness.

3.

Finally, the petitioner contends that his appellate attorney was ineffective by failing to investigate and assert the petitioner's actual innocence.  But the petitioner never took the position that he did not stab Reginald Lucas to death.  Instead, he theorized that he acted in self-defense, or that the killing was a crime less serious than first-degree murder, such as second-degree murder or manslaughter.  Nonetheless, when the petitioner entered a no contest plea to second-degree murder in open court after having been found competent, appellate counsel was not ineffective when he did not investigate whether the petitioner was actually innocent.

B.

The petitioner argues that his no contest plea was involuntary because he was heavily medicated during the plea hearing, and he was coerced into entering the plea.  As noted above, he also asserts that he is actually innocent.

A belated claim of innocence alone will not undermine an otherwise valid guilty or contest plea.  The Supreme Court has held explicitly that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime.  *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence."  *Gunn v. Kuhlman*, 479 F. Supp. 338, 344 (S.D.N.Y. 1979) (footnotes omitted).  Therefore, the petitioner's claim of actual innocence does not affect the validity of his plea.  And as a free-standing claim, it

-12-

will not afford him habeas relief.  *See Herrera v. Collins*, 506 U.S. 390, 400 (1993) (noting that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding").

However, the petitioner also contends that his guilty plea was involuntary because he was heavily medicated and incompetent.  To be valid, a guilty plea must be voluntarily and intelligently made.  *Brady v. United States*, 397 U.S. 742, 748-49 (1970).  The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences."  *Id.* at 748.  The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it."  *Id.* at 749.  A "plea of guilty entered by one fully aware of the direct consequences" of the plea is voluntary in a constitutional sense, and the fact that the defendant "did not correctly assess every relevant factor entering into his decision" does not mean that the decision was not intelligent.  *Id.* at 755, 757.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial.  *Medina v. California*, 505 U.S. 437, 439 (1992); *see also Pate v. Robinson*, 383 U.S. 375, 378 (1966).  A defendant is competent if he "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and . . . he has a rational as well as factual understanding of the proceedings against him."  *Dusky v. United States*, 362 U.S. 402, 402 (1960).  If at any point "before or during trial 'sufficient doubt' arises about a defendant's competence — 'the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense' — the trial court should order a competency hearing."  *Cowans v. Bagley*, 639 F.3d 241, 247 (6th Cir. 2011)

-13-

(quoting *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).  The competency standard for entering a guilty or no contest plea is the same as that for standing trial.  *Godinez v. Moran*, 509 U.S. 389, 396-401 (1993).  A state court's "determination of competence is a factual finding, to which deference must be paid."  *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (citing *Thompson v. Keohane*, 516 U.S. 99, 110–11 (1995)).

The trial court, in denying the petitioner's motion for relief from judgment, found no evidence that the petitioner's plea was involuntary.  Although the discussion is brief and lacks detail, the trial court noted that "[t]he record indicates that Defendant fully understood the nature of his guilty plea."  Op. Denying Mot. For Relief from J. at 2 (June 7, 2007).  But the lack of detail reflects the petitioner's own presentation.  His affidavit filed in support of his post-conviction motion states only that "at the time of [his] plea [he] was on several medications."  He never mentioned what the medications were, or how they might have affected his cognition.  Moreover, the petitioner had been examined previously and found competent.  The trial court's rejection of the petitioner's involuntariness argument, in light of this flimsy record of incompetence, cannot be said to be unreasonable.  Nothing in the record rebuts the trial court's finding that the petitioner was competent or indicates the petitioner was "incompetent or otherwise not in control of his mental faculties." *Brady*, 397 U.S. at 756.

The petitioner's argument that his plea was "coerced" appears to be based on the idea that after the motion to quash the first-degree murder charge was denied, he had to make a decision of risking a trial and a possible mandatory life sentence without the possibility of parole.  That is an understandable but common conundrum frequently confronted by criminal defendants on the eve of trial.  But it is not sufficient to undermine the voluntariness of a no contest plea.

-14-

The petitioner's related contention that he was "coerced" into pleading no contest also fails because he stated on the record at the plea hearing that no threats or coercion had been made to induce him to plead no contest. Proof that a no contest plea was voluntary and intelligently made generally is furnished through a transcript of state court proceedings. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state-court findings of fact and to the judgment itself. *Garcia*, 991 F.2d at 326-27. A satisfactory state-court transcript containing findings after a proper colloquy places upon the petitioner a "heavy burden" to overturn the state findings. *Ibid.* The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The petitioner's bare claim that he was coerced into pleading no contest is insufficient to overcome that presumption of verity.

His argument that his plea was based on inaccurate information appears to be founded on the premise that one of the witnesses against him had an undisclosed pecuniary interest in the outcome of the petitioner's case, and that his statement to the police was inaccurate. However, the factual basis for the no contest plea was outlined in detail on the record of the plea hearing, without protest from the petitioner or his attorney. The petitioner's belated claims of inaccuracy, once again, do not rebut the "strong presumption of verity," *Blackledge*, 431 U.S. 74, that attaches to the proceedings in the state court. The state trial judge's conclusion to that effect reasonably applied Supreme Court precedent.

-15-

IV.

The state courts reasonably applied federal law as established by the Supreme Court when addressing the petitioner's claims.  Therefore, the petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   July 13, 2016

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 13, 2016.

s/Susan Pinkowski
SUSAN PINKOWSKI

</div>

-16-